JOSEPH VINCZE, ADMINISTRATOR AD PROSEQUENDUM OF STEVEN VINCZE, DECEASED, RESPONDENT, v. NEW YORK CENTRAL RAILROAD COMPANY, APPELLANT.

ALEXANDER TOMASI, ADMINISTRATOR AD PROSEQUEN-DUM OF JOSEPH B. TOMASI, DECEASED, RESPOND-ENT, v. NEW YORK CENTRAL RAILROAD COMPANY, APPELLANT.

Submitted May term, 1931—Decided October 13, 1931.

Before Justices CAMPBELL, LLOYD and BODINE.

For the appellant, *Wall, Haight, Carey & Hartpence.*

For the respondents, *Breslin & Breslin* and *Feder & Rinzler.*

PER CURIAM.

The plaintiffs' decedents were killed in a crossing collision between a truck in which they were riding and defendant's train in Harrington Park, and the actions were to recover damages for their deaths. There were verdicts for the plaintiffs and the defendant appeals.

There are minor objections to rulings on evidence which are brought up on the appeal, but the fundamental question in

the case is whether there is sufficient evidence of negligence to go to the jury.

The averments of negligence were that the statutory signals were not given, that a crossing bell was not operating, and that a flagman stationed to give warning of the approach of trains was not performing his duty. There were two witnesses called by the plaintiffs apparently for the purpose of establishing some or all of these phases of negligence. The defendant called its train crew and a number of others to prove that the obligations on the part of the railroad were complied with.

The plaintiffs first called a man named Dreisbach and attempted to establish by him the failure of the bell to ring, the failure of the statutory signals and a failure on the part of the flagman to give warning. They also called a fourteen-year-old girl named Buelah Lang for the same purpose. The substance of Dreisbach's testimony is that he was standing on the sidewalk in front of his business place, about seventy or seventy-five feet from the crossing, that he observed the truck rolling onto the track and stalling, up to which time there was no flagman or watchman. He was asked had the flagman done anything and he answered he should explain that. Then the witness went on: "I was standing by this window here and the train went very sharp whistle, toot-toot-toot. Q. Usual whistles? A. Oh, no. Varied in succession like, and caused me to look forward the track." He then said he saw the truck roll on the track and the flagman shouted to stop, that the truck was on the track when he started to shout. He was then asked whether his vision to the crossing lights was unobscured and he said he did not see them working and that he was looking right at the crossing. Unfortunately on cross-examination this testimony was completely nullified by the evidence of the witness. From this it appeared that he had not been giving heed or attention to the conditions at the crossing; neither the lights; the flagman; nor the truck, except that he saw the truck roll on the track and heard the flagman shout the warning. He admitted to having heard from ten to fifteen toots of the

whistle consuming not over five seconds of time, which was far from proving failure to give warning by the engineer as required by law.

The other witness testified that she did not hear any bell or whistle; she did not hear anything, not even the shrieking of the danger signals. Her testimony was of that negative character which is without probative force under our cases, particularly in the face of affirmative proof to the contrary. *Holmes* v. *Pennsylvania Railroad,* 74 *N. J. L.* 469.

Against this was the very substantial proof of a number of witnesses that the signals and the warnings were given.

Under these circumstances we think it was the duty of the learned trial judge to direct a verdict in favor of the defendant company. Having reached this conclusion on the fundamental phase of the case we find it unnecessary to examine the remaining grounds of appeal seeking to bring before the court the rulings on evidence and other alleged trial errors.

The judgments are reversed and a *venire de novo* awarded.